UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Anichini, Inc.,
    Plaintiff,

v.                                         File No. 1:05-CV-55

Richard Campbell,
    Defendant.

## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
(Paper 7)

Plaintiff Anichini, Inc. ("Anichini") filed this action against its former employee, Richard Campbell ("Campbell"), alleging copyright infringement, breach of contract and unfair competition. The case is currently before this Court on Campbell's motion to dismiss for lack of personal jurisdiction under F. R. Civ. P. 12(b)(2), and for improper venue under F. R. Civ. P. 12(b)(3). In the alternative, Campbell moves to transfer venue.

For the following reasons, I recommend that Campbell's motion be DENIED.

## I. BACKGROUND

For the purposes of this motion, the following facts are taken as true. Anichini is a Vermont corporation with its principal place of business in Tunbridge, Vermont. (Paper 1, ¶2). Anichini designs and sells luxury linens

9/29/2005: Upon review and over objection, the Recommendation and Ruling of the Magistrate Judge is Affirmed, Approved and Adopted. The case is returned to the Magistrate Judge for further proceedings. So Ordered.
/s/ J. Garvan Murtha, United States District Judge

through retail stores and directly to hotels, spas and resorts. (Id.). Anichini owns a copyright for its original fabric design, entitled "Venezia," which it uses for its luxury throws. (Id. at ¶¶6-7). Anichini sold Venezia throws to the Broadmoor Hotel, among others. (Id. at ¶8).

In August 2002, Anichini hired Campbell as a salesperson. (Id. at ¶¶ 9-10). In July 2003, Anichini terminated his employment. (Id. at ¶ 11). Pursuant to his employment contract, Campbell agreed to return all of Anichini's product samples upon termination and to keep Anichini's product design information strictly confidential for one year. (Id. at ¶ 10). Campbell did not return the Venezia design samples after he was fired.[1] (Affidavit of Susan Dollenmaier, ¶ 10). Since leaving Anichini, Campbell has manufactured, or caused to be manufactured,

---

[1] At the hearing on his motion, Campbell argued that Anichini has failed to make a *prima facie* showing that he breached his employment contract. In support of this contention, he pointed to his affidavit in which he states that, "The throws, which I subsequently provided to the Broadmoor Hotel, were manufactured outside of the State of Vermont and never passed through its borders." (Doc. 7, Ex. 1). However, this statement does not directly refute Anichini's claim that he "retained copies of Anichini's VENEZIA pattern after his termination" in violation of his employment contract. (Affidavit of Susan Dollenmaier, ¶ 13).

2

unauthorized copies of the Venezia pattern throw. (<u>Id.</u> at ¶ 13). Campbell has also offered for sale and sold these unauthorized copies to the Broadmoor Hotel. (<u>Id.</u> at ¶¶ 14-15).

## II. <u>DISCUSSION</u>

### A. <u>Rule 12(b)(2) - Lack of Personal Jurisdiction</u>

The plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant. <u>Chaiken v. VV Publ'g Corp.</u>, 119 F.3d 1018, 1025 (2d Cir. 1997); <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996); <u>Tom and Sally's Handmade Chocolates, Inc. v. Gasworks, Inc.</u>, 977 F. Supp. 297, 299 (D. Vt. 1997). The plaintiff must also show that there is jurisdiction "with respect to each claim asserted." <u>Sunward Elecs., Inc. v. McDonald</u>, 362 F.3d 17, 24 (2d Cir. 2004). At this early stage of the litigation, the plaintiff satisfies this burden with "legally sufficient allegations" that present *prima facie* evidence of proper jurisdiction. <u>Chaiken</u>, 119 F.3d at 1025; <u>Tom and Sally's</u>, 977 F. Supp. at 299. To determine if the plaintiff has satisfied this burden, the court evaluates the plaintiff's pleadings and affidavits, construes them in the light most favorable to

3

the plaintiff, and resolves any doubts in the plaintiff's favor. Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985); Sollinger v. Nasco International, Inc., 655 F. Supp. 1385, 1386 (D. Vt. 1987).

To determine whether there is personal jurisdiction over the defendant, the court makes a two-part inquiry. Metro. Life, 84 F.3d at 567; Sollinger, 655 F. Supp. at 1387. First, the court reviews the forum state's long-arm statute. Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). If state law supports jurisdiction, then the court reviews whether such jurisdiction violates due process. Id. In Vermont, however, the long-arm statute allows jurisdiction over defendants "to the full extent permitted by the Due Process Clause." Metro. Life, 84 F.3d at 567 (quoting Bechard v. Constanzo, 810 F. Supp. 579, 582-83 (D. Vt. 1992)). Therefore, the inquiry is reduced to one part: whether jurisdiction over the defendant comports with the standards of due process. Id.

The Due Process analysis for personal jurisdiction also has two parts. First, the court evaluates whether the defendant has sufficient "minimum contacts" with the forum state. Id. Second, if such contacts exist, the court

4

reviews whether jurisdiction based on such contacts is "reasonable under the circumstances of the particular case." Id.

### 1. Minimum Contacts

The guiding principle in evaluating a defendant's contacts with the forum state is that jurisdiction must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws." Sollinger, 655 F. Supp. at 1387 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)). Jurisdiction based on such action is justified because the defendant "should reasonably anticipate being haled into court there." Artec Distrib., Inc. v. Video Playback, Inc., 799 F. Supp. 1558, 1560 (D. Vt. 1992) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Accordingly, jurisdiction usually is not proper unless the defendant "actively initiate[s] contacts in a state," id., or "creates 'continuing obligations' between itself and a Vermont resident." Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp., 921 F.

Supp. 1206, 1209 (D. Vt. 1996) (quoting Burger King, 471 U.S. at 476).

For example, in Artec, this Court held that it did not have jurisdiction over the defendant because, although the defendant purchased the plaintiff's products, communicated with the plaintiff regarding those purchases, and made payments to the plaintiff in Vermont, the defendant did not initiate the business relationship. 799 F. Supp. at 1561. Rather, the plaintiff "purposefully sought out...business" with the defendants by phone, mail and in person. Id. at 1559. Therefore, despite the defendant's participation in business transactions with a Vermont corporation, this Court found that the defendant did not have sufficient contacts with Vermont to support personal jurisdiction. Id. at 1561.

In this case, the "nature and quality" of Campbell's contacts with Vermont support finding that the Court has jurisdiction. Burger King, 471 U.S. at 476. First, Campbell actively initiated his relationship with Anichini. In June 2000, he solicited Anichini for employment and was rejected. (Paper 10, ¶ 4). In 2002, his efforts succeeded and he signed an employment contract with Anichini. (Id. at

6

¶ 6).

Second, Campbell's employment contract imposed continuing obligations on him, including making sales to a particular region, submitting sales reports, travel, abiding by the Anichini employee handbook, enhancing the company's good name and protecting its confidential designs. (Id. at Ex. D ¶¶ 1, 3, 4, 6, 7, and 9). The contract also has a choice-of-law provision designating Vermont law to resolve contract disputes. (Id. at ¶ 14). Combined with the "interdependent relationship" between Campbell and Anichini created by the employment contract, this choice-of-law provision reinforces the conclusion that Campbell "purposefully invoked the benefits and protections of [the] State's laws." Burger King, 471 U.S. at 482. Therefore, Campbell should have reasonably anticipated being haled into court in Vermont.

Additionally, pursuant to his employment, Campbell traveled to Vermont and maintained routine e-mail and telephone communications with Anichini. (Paper 10, ¶ 10). Hence, at this stage of the proceedings, it cannot be said that Campbell's contacts with Vermont are "random, fortuitous or attenuated." Id. at 475; see also Tom and

Sally's, 977 F. Supp. at 301 (finding that distributor had sufficient contacts with Vermont, despite its absence from the state, to subject it to the court's jurisdiction for a trademark infringement action); Ben & Jerry's, 921 F. Supp. at 1210 (finding personal jurisdiction over the defendant despite its absence from Vermont based, in part, on communications "indicat[ing] the existence of a business relationship...such that the Defendant ha[d] created 'continuing obligations' between itself and a Vermont resident"); Northern Aircraft, Inc. v. Reed, 154 Vt. 36, 43-44 (1990) (finding jurisdiction proper over defendant residing in Kansas who contacted Vermont corporation by telephone and entered into an exclusive listing agreement without ever coming to Vermont).

A plaintiff relying on the court's "specific jurisdiction" must also show, in addition to minimum contacts, that the plaintiff's claim "arises out of or relates to" the defendant's contacts with the forum. Chaiken, 119 F.3d at 1027-28; Sollinger, 655 F. Supp. at 1388. For example, in Sollinger, the defendant argued that jurisdiction would be improper because the claim of copyright infringement did not arise directly from the

8

defendants "actual activities in Vermont." Id. This Court rejected the plaintiff's effort to narrow the claim and the standard. Rather, it found that it was enough that the copyright claim was *related to* defendant's conduct in Vermont and might potentially arise directly from it.

In this case, Anichini argues that Campbell failed to return the samples of Anichini's products and from these samples created copies of the "Venezia" throw blanket. (Paper 1, ¶ 12). Assuming this is true, as the Court must when deciding a pretrial motion to dismiss, Bechard v. Constanzo, 810 F. Supp. 579, 581 (D. Vt. 1992), Anichini's copyright claim is certainly related to Campbell's employment and any proprietary information he obtained as a result. Campbell argues that the infringement claim is based on sales that took place after the termination of his relationship with Anichini, that he returned Anichini's samples, and that he obtained the pattern from his buyer. However, the Court must construe any factual disputes in favor of the plaintiff. Hence, Anichini has made a sufficient *prima facie* showing that its copyright claim is related to Campbell's contacts with Vermont.

Specific personal jurisdiction is also proper based on

the effect of Campbell's actions. Under the "effects test," jurisdiction over a defendant is proper when Vermont is the "focal point of the [alleged tort] and of the harm suffered." Real Good Toys, Inc. v. XL Mach. Ltd., 163 F. Supp. 2d 421, 424 (D. Vt. 2001) (quoting Chaiken, 119 F.3d at 1029); see also Calder v. Jones, 465 U.S. 783, 789 (1984). In Real Good Toys, this Court found, based on the plaintiff's allegations, that the defendant's conduct satisfied the effects test. Id. The defendant "knowingly and willfully infringed upon the copyright and trade dress of a Vermont corporation, knowing that the 'brunt of the injury' would be sustained in Vermont." Id. at 425; see also Stuart v. Fed. Energy Sys., Inc., 596 F. Supp. 458, 462 (D. Vt. 1984) ("[A]n individual injured in Vermont need not go to California to seek redress from persons who, though remaining in California, knowingly cause the injury in Vermont."). In this case, Anichini alleges that Campbell knowingly copied and sold Anichini's proprietary blanket design. (Paper 1, ¶¶ 13, 15 and 18). Accordingly, the Court has jurisdiction over Campbell because the "brunt of the injury" resulting from the alleged copyright infringement was sustained by Anichini in Vermont.

10

Using the same reasoning, Anichini has made a sufficient showing of jurisdiction for the breach of contract and unfair competition claims. Campbell actively initiated a continuing business relationship with a Vermont corporation. This contact with Vermont should have caused him to reasonably anticipate being sued in Vermont if he breached the underlying contract and/or unfairly competed with his former employer. Moreover, the "brunt of the injury" resulting from such conduct is felt in Vermont.

2. Reasonableness

Since Anichini has satisfied the first part of the inquiry by establishing that Campbell has sufficient minimum contacts with Vermont, the Court must now consider whether asserting personal jurisdiction based on Campbell's contacts is reasonable. Metro. Life, 84 F.3d at 567. Jurisdiction over a defendant is reasonable when it aligns with "traditional notions of fair play and substantial justice." Id. at 568. This reasonableness determination is guided by the following factors: (1) the burden jurisdiction places on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in

efficient resolution, and (5) the shared interest of the states in substantive social policy. Burger King, 471 U.S. at 477.

"[J]urisdiction is favored where the plaintiff has made a threshold showing of minimum contacts." Metro. Life, 84 F.3d at 568. However, the court may find it lacks jurisdiction if the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id.

In this case, Campbell asserts that litigating in Vermont is burdensome and expensive, but focuses his arguments on refuting minimum contacts. Given that modern technology and travel have alleviated much of the difficulty for out-of-state defendants, this factor alone is not particularly compelling. See id. at 574. Moreover, Anichini would bear the same burden if the case were litigated outside of Vermont.

Campbell did not address the remaining factors. However, it is not disputed that Vermont has an "important interest in protecting its citizens' intellectual property rights and business interests." Real Good Toys, 163 F. Supp. 2d at 425. Additionally, Anichini's interest in

12

convenient and effective relief is served by allowing the action in Vermont. See Metro. Life, 84 F.3d at 574. Because the witnesses and evidence will be located both inside and outside Vermont, and there are no substantive social policies at issue, these factors do not favor either party. Id. The weight of the "reasonableness" factors therefore favor jurisdiction over Campbell in Vermont.

B. Rule 12(b)(3) - Improper Venue

Campbell also moves to dismiss because of improper venue under Rule 12(b)(3). The plaintiff bears the burden of showing that its chosen venue is proper. Country Home Products, Inc. v. Schiller-Pfeiffer, Inc., 350 F. Supp. 2d 561, 568 (D. Vt. 2004). The proper venue for actions based on copyright infringement is "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Campbell argues that venue is improper because the court does not have personal jurisdiction over him. However, since a finding of personal jurisdiction generally defeats an argument of improper venue, see Real Good Toys, 163 F. Supp. 2d at 425 ("It is generally held that assessment of venue merges into the personal jurisdiction analysis, and thus venue is proper anywhere there is

13

personal jurisdiction."), this argument fails.

Alternatively, Campbell argues that <u>Blue Compass Corp. v. Polish Masters of Am.</u>, 777 F. Supp. 4 (D. Vt. 1991), limits the merger of personal jurisdiction and venue. Campbell's reliance on this case is misplaced. In <u>Blue Compass</u>, this Court found that it had personal jurisdiction over the defendant accused of copyright infringement, but found venue improper. <u>Id.</u> at 5. The Court reasoned that because the defendant's California business was not incorporated it could not be "deemed to reside" in Vermont as directed by 28 U.S.C. § 1391(c).[2] <u>Id.</u> In <u>Real Good Toys</u>, however, this Court limited the holding in <u>Blue Compass</u> to the "resides" language, noting that "[t]he ruling ... did not discuss whether the defendant could be 'found' in the forum." <u>Real Good Toys</u>, 163 F. Supp. 2d at 425 n.3 (finding that venue was proper because it had personal jurisdiction).

This limitation is supported by the language of the venue statute for copyright actions, quoted above, which

---

[2] 28 U.S.C. § 1391(c) provides in part: "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

14

plainly distinguishes between "resides" and "may be found." 28 U.S.C. § 1400(a). It is generally accepted that the "may be found" language in the copyright venue statute means amenability to personal jurisdiction. Palmer v. Braun, 376 F.3d 1254, 1259 (11th Cir. 2004) ("A defendant 'may be found' in a district in which he could be served with process; that is, in a district which may assert personal jurisdiction over the defendant."); Milwaukee Concrete Studios v. Fjeld Mfg. Co., 8 F.3d 441, 445-46 (7th Cir. 1993). This rule holds true even when the defendant is an individual. Quality Improvement Consultants, Inc. v. Williams, No. Civ. 02-3994(JEL/JGL), 2003 WL 543393, at *7-8 (D. Minn. Feb. 24, 2003) ("The Court is not persuaded that noncorporate defendants should be treated differently than corporate defendants for purposes of determining whether they 'may be found.'"); Linzer v. EMI Blackwood Music, Inc., 904 F. Supp. 207, 215 (S.D.N.Y. 1995).

Therefore, although Blue Compass held that the general venue rule for corporations under § 1391(c) did not apply in that case, this Court did not evaluate whether venue might otherwise be proper under the "may be found" language of § 1400(a). Hence, the authority supporting the rule that

15

venue is proper when there is personal jurisdiction, regardless of whether the defendant is an individual or a corporation, outweighs the alternative.

Anichini's chosen venue is proper under 28 U.S.C. § 1400(a). The Court has personal jurisdiction over Campbell and, therefore, he "may be found" here.

C. Motion to Transfer

Campbell moves in the alternative for a transfer of venue based on both 28 U.S.C. § 1404(a) and § 1406(a).  The moving party bears the burden of showing clear and convincing evidence to support a motion to transfer venue. Tom and Sally's, 977 F. Supp. at 302; see also Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978), abrogated on other grounds by Pirone v. MacMillan, Inc., 894 F.2d 579 (2d Cir. 1990).

1. § 1406(a)

Transfer of venue under § 1406(a) is appropriate when the court finds that the case was brought in an improper venue. 28 U.S.C. § 1406(a) cmt. on 1996 Amendment; Sollinger, 655 F. Supp. at 1389.  Since this action was properly brought in this Court, § 1406(a) does not apply.

2. § 1404(a)

16

When a case is brought in a proper venue, a court may still transfer venue under § 1404(a). It is within the court's discretion to grant a transfer that serves the interests of justice and the convenience of the parties and witnesses. Tom & Sally's, 977 F. Supp. at 301-302. The court's discretion is guided by the following factors: (1) the convenience of the parties; (2) the convenience of the witness; (3) the relative ease of access to sources of proof; and (4) the interests of justice. Id. Typically, "discretionary transfers are not favored." Id. at 302.

In this case, Campbell argues only that a transfer of venue based on § 1404(a) is not prohibited by Anichini's supplemental state law claims. Campbell does not present any affirmative basis for granting a discretionary transfer of venue based on the convenience of the parties and witnesses, or the interests of justice. Campbell has only asserted that a transfer is appropriate because venue was not proper in the first place. This argument has already been addressed. Therefore, because Campbell has not met his burden, a discretionary transfer of venue under § 1404(a) is not warranted.

## CONCLUSION

17

For the foregoing reasons, I recommend that this Court DENY Campbell's motion to dismiss and motion to transfer venue (Paper 7).

Dated at Burlington, in the District of Vermont, this 30th day of August, 2005.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify portions of the proposed findings, recommendations or report objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).